## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| COMMONWEALTH INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-3393 |
| | ) | |
| TITAN TIRE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiff Commonwealth Insurance Company (Commonwealth) and Defendant/Cross-claimant Titan Tire Corporation (Titan). See Commonwealth Insurance Company's Motion for Summary Judgment (d/e 33) (Commonwealth's Summary Judgment Motion); Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (a) & (b) (d/e 38) (Titan's Summary Judgment Motion). Commonwealth is a Canadian company with its principal place of business in Vancouver, British Columbia, and Titan is an Illinois corporation with its principal place of business in Des Moines, Iowa. The amount in controversy exceeds $75,000.00; thus, jurisdiction is proper under 28 U.S.C. § 1332. The

parties have consented to a determination of this case by the United States

Magistrate Judge, pursuant to 28 U.S.C. § 636.  Order, November 27, 2002

(d/e 17).  For the reasons set forth below, Commonwealth's Summary

Judgment Motion is allowed, in part, and denied, in part.  Titan's Summary

Judgment Motion is denied.

BACKGROUND

Commonwealth provided general liability insurance to Titan under a

comprehensive policy, number CRX57220, and an umbrella policy, number

CRX57221, both of which were effective for the period from June 1, 1998

through June 1, 1999 (policy period).  Under the policies, Titan had a self-

insured retention (SIR) of $100,000.00.  Policy CRX57220 provided a limit

on Commonwealth's liability as follows:

> The limit of the insurer's liability under this Policy shall be the
> amount stated in the Declarations as "each Occurrence" for
> damages for any one Occurrence or series of Occurrences
> resulting form one cause, and subject to such limit the amount
> stated in the Declarations as "aggregate" for any number of
> Occurrences in any one policy period, if caused by the
> Products Hazard or Completed Operations Hazard as defined
> herein.

Complaint (d/e 1), Ex. A, Insuring Agreements, p. 12.  The Declarations of

policy CRX57220 stated the limits of liability as "$5,000,000.00 Inclusive

Each Occurrence; $5,000,000.00 In the Aggregate with respect to Products

and Completed Operations Liability."  Id., Ex. A, Declarations, p. 1.  The
Umbrella Policy, policy CRX57221, contained limits on liability as follows:
"$25,000,000.00 Inclusive Each Occurrence; $25,000,000.00 In the
Aggregate with respect to Products and Completed Operations Liability."
Id., Ex. B, Declarations, p. 2.

During the policy period, an accident occurred in which eight people
were killed.  This accident gave rise to several lawsuits against Titan in
state court in Duval County, Texas, which alleged that the deaths were the
result of a defect in a tire produced by Titan (collectively, "the Ramirez
case").  Commonwealth paid its applicable policy limits, $5 million under
policy CRX57220 and $25 million under policy CRX57221, to settle the
Ramirez case.  It was Commonwealth's decision, not Titan's, to pay the
policy limits in the Ramirez case.  During settlement negotiations in the
Ramirez matter, Titan's General Counsel Cheri Holley expressed concern
about exhausting Titan's insurance coverage for the policy period.  Indeed,
Commonwealth's outside counsel in the Ramirez case, James Brennan,

addressed the issue in a September 10, 1999, facsimile that was carbon

copied to Holley.  The fax stated:

> Titan's concern, as Commonwealth understands it, is that Titan
> must consider the consequences of accepting the settlement
> demand in the Ramirez law suit, which will leave Titan with no
> insurance coverage for the defence [sic] and/or settlement of
> other suits which might be filed with respect to unrelated
> Products and Completed Operations claims within the same
> policy term.  Further, Titan is exposed to fresh suits arising out
> of its Products and Completed Operations once the plaintiff bar
> learns that Titan has settled this claim.  Titan, therefore, as we
> understand it, has a substantial uninsured risk with respect to
> the policy term June 1, 1998 to June 1, 1999 even if the
> Ramirez claims can be settled in accordance with the terms of
> the settlement demand. . . . [T]he resolution of the Ramirez
> claims for the amount of the demand will leave Titan without
> coverage for an entire year of Products and Completed
> Operations claim exposures.

Declaration of Lawrence D. Mason in Support of Commonwealth's Motion

for Summary Judgment (d/e 36) (Mason Declaration), Ex. 43.

Nevertheless, the Ramirez matter was settled, and Commonwealth paid

the $30 million to the Ramirez plaintiffs in February 2000.   The Ramirez

settlement fell under Titan's Products and Completed Operations insurance

coverage.  The parties agree on summary judgment that the Ramirez

settlement exhausted the limits of the policies only with respect to Products

and Completed Operations Liability and not with respect to other types of

claims, including personal injury claims.

In February 1999, Mark and Lisa New sued Titan in Iowa state court for personal injuries resulting from an incident that occurred on January 8, 1999.  The News alleged that Mark New was injured when he fell into an uncovered service pit while attempting to make a delivery to a Titan production facility in Des Moines, Iowa.  Policy No. CRX57220 provided personal injury liability coverage as follows:

> The insurer agrees to pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages.
>
> 1.  Personal Injury Liability
>
> because of Personal Injury sustained by any person or persons during the Policy Period.

Complaint, Ex. A, Insuring Agreements, p. 1.

 While Titan now agrees that coverage remains for the New claim under the policies after the Ramirez settlement, Titan asserts that Titan did not know there was coverage under the policy for Mark New's injuries until after the New case had been tried.  Nevertheless, Titan informed Commonwealth of the New lawsuit during the Spring of 1999, and Commonwealth assigned the matter to Claims Examiner Coral Davis.  On May 28, 1999, Davis sent a fax to Jennifer Cramm, a paralegal with Titan, regarding the New lawsuit.  Mason Declaration, Ex. 4.  Davis inquired

whether Titan had been able to establish the severity of Mark New's injuries and whether "[i]f a settlement is made or if an award is given, if this matter proceeds to trial, will it exceed your $100,000.00 SIR." Id. Cramm responded by letter dated June 10,1999, stating that Titan had not received any information regarding the amount of money involved in the New lawsuit. Id., Ex. 5. Cramm's letter stated "Titan Tire Corporation does not believe at this time that this matter will go to an amount in which your insurance company will need to be involved but, we just wanted to make you aware of the matter." Id. After receiving Cramm's response, Davis periodically contacted Cramm by letter, seeking information as to the status of the New case. Cramm consistently responded to Davis's letters with letters of her own. All of Cramm's letters advised Davis to contact her if additional information was needed; Davis, however, never requested additional information or advised Cramm that her letters were not responsive to Commonwealth's requests.[1]

---

[1]Titan submits as an undisputed fact that

Although Jennifer Cramm's letters always advised Coral Davis to contact her if additional information was needed by Commonwealth, Coral Davis never contacted Jennifer Cramm or anyone else at Titan to follow up on the Mark New matter, to request additional information, or to advise that Jennifer Cramm's letters were not responsive.

Titan's Summary Judgment Motion, p. 8, Material Facts Claimed to be Undisputed No.

Titan hired outside counsel, Gene La Suer, to defend the New

lawsuit.  The New lawsuit was set for trial on January 24, 2000.  By letter

dated January 3, 2000, La Suer informed Titan that the trial date was being

pushed back to May 8, 2000.  Davis sent Cramm a brief letter dated

February 21, 2000, which stated "Have you been able to determine the

extent of the Plaintiff's injuries and quantum.  Please advise."  Mason

Declaration, Ex. 15.  Cramm responded by letter dated March 10, 2000,

stating:

> Titan Tire Corporation's counsel has been in contacted [sic]
> with Mr. New's counsel regarding a settlement demand in this
> matter.  To date Titan Tire Corporation's counsel has not
> received a demand from plaintiff's counsel in this matter.  Once
> I have received that demand or any other information on the
> progress of this matter I will forward it onto [sic] you.

Id., Ex. 17.

La Suer testified in his deposition that he spoke to Brennan in the

spring of 2000, regarding a South Dakota case that La Suer was handling

for Titan.  According to La Suer, one of his questions for Commonwealth's

outside counsel was whether the South Dakota case fell in the same policy

---

49. Commonwealth lists this as a Disputed Material Fact.  Commonwealth Insurance
Company's Opposition to Titan Tire Corporation's Motion for Summary Judgment (d/e
47), p. 17.  Commonwealth's response, however, does not actually contest the facts set
out by Titan, but rather attempts to explain Davis's conduct as "responsive to Titan
repeatedly advising Commonwealth that the Mark New claim would not exceed Titan's
SIR."  Id.

period as the Ramirez and New cases.  <u>Titan's Summary Judgment</u>

<u>Motion</u>, Ex. D, <u>Deposition of Gene R. La Suer</u>, p. 25.  According to La

Suer, La Suer commented that the Ramirez case had exhausted the limits

for the New case, stating "words to the effect, 'So it's not like the New case,

where I don't have coverage?'"  <u>Id</u>.  According to La Suer, Brennan

responded, "'It's different than the New case, yes.'"  <u>Id</u>. at 25-26.

On March 21, 2000, the News's attorney submitted a settlement

proposal to La Suer.  <u>Mason Declaration</u>, Ex. 18.  The settlement proposal

outlined past medical expenses in the amount of $24,714.46, and proposed

settlement in the amount of $700,000.00, with Titan paying all court costs.

<u>Id</u>.  Titan countered with an offer to settle for $54,000.00, which the News

rejected by letter dated May 3, 2000.  <u>Id</u>., Ex. 19.  The News proposed

settlement in the amount of $390,000.00.  <u>Id</u>.  Titan rejected this offer on

May 3, 2000, and offered to settle for $100,000.00.  <u>Id</u>., Ex. 20.  The News

rejected the $100,000.00 offer on May 4, 2000, and offered to settle for

$310,000.00.  <u>Id</u>., Ex. 21.  Titan rejected this demand, instead offering to

settle for $125,000.00.  <u>Id</u>., Ex. 22.  The News rejected this offer on May 5,

2000, and demanded $275,000.00 to settle the matter.  <u>Id</u>., Ex. 23.  Titan

did not accept the News's offer, and the matter proceeded to jury trial on

May 8, 2000.

On May 11, 2000, the jury returned a verdict in favor of the News against Titan in the amount of $328,071.00.  Titan filed a motion for judgment notwithstanding the verdict or a new trial on May 22, 2000.  On May 23, 2000, La Suer faxed Titan a proposed settlement offer for the News in the amount of $300,000.00.  Mason Declaration, Ex. 26.  La Suer's fax sought Titan's permission to send the proposal "to get this case settled."  Id.  La Suer advised Titan, " I do NOT believe there is an issue that we can win on appeal because the judge was very good about giving us the instructions we needed and there was NO evidence that was submitted that would reverse the judgment."  Id.  Titan instead offered $200,000.00 to settle the matter.  The News's attorney rejected this offer on May 24, 2000, stating that he would recommend that his clients settle for $325,000.00.  Id., Ex. 27.  On May 25, 2000, La Suer participated in a settlement conference with the News's attorney, which resulted in an offer to settle by the News for $325,000.00.

In a letter dated May 31, 2000, La Suer suggested that Titan accept the News's $325,000.00 settlement offer.  Mason Declaration, Ex. 29.  La Suer noted that, while Titan had appeal issues, he "seriously doubt[ed]"

that Titan could prevail on appeal.  Id.  Holley rejected La Suer's advice, instructing him to appeal the matter.  On June 13, 2000, the News withdrew their settlement offer.  On June 21, 2000, the trial court denied Titan's post-trial motion.  Titan appealed.

By letter dated July 14, 2000, Cramm informed Davis that the New case had proceeded to trial, resulting in an award of $328,071.00 in favor of the News.  Mason Declaration, Ex. 32.  Cramm forwarded Davis a copy of the verdict form.  Id.  Cramm's letter did not ask Commonwealth to pay the judgment.  According to Titan, it was Titan's understanding , after the Ramirez settlement, that the limits of liability available under the policies had been exhausted and there was no coverage remaining for the New case.

On October 20, 2000, Commonwealth's Senior Vice-President of Claims Dennis Shave wrote to Holley to express his "serious concerns with respect to the way that claims against Titan are being handled."  Mason Declaration, Ex. 33.  Shave requested full information on every claim where the total of the claim and defense costs could exceed $100,000.00. Attached to the Shave letter was a document entitled "Schedule of Titan Claims per Policy Year."  With respect to the policy year June 1, 1998 to

June 1, 1999, the schedule noted, "This is the year of the Duval County

claim.  The policy limits have been exhausted."  However, the schedule

went on to address the two additional Commonwealth files for that year.

With respect to the New case, the schedule stated:

> File 181 - New (Iowa)
>
> Date of Loss January 8, 1999
>
> Reported to Commonwealth in April 1999.  This is a slip and fall
> on Titan's property and therefore the policy limits defence is not
> available.
>
> Coral Davis called Titan's para-legal, Jennifer Cramm, and was
> told it would be within the self-insured retention of $100,000.
> Commonwealth sent several letters asking for details, which
> were ignored.  Then a jury judgment in excess of $300,000 was
> handed down in July.  Titan says they are appealing but no
> further particulars are given.

Id.

On October 24, 2000, Commonwealth's outside counsel, Brennan,

sent a letter to Cramm which stated as follows:

> Commonwealth is surprised to see that the jury awarded Mr.
> and Mrs. New $328,071.00 in damages in that Titan had
> asserted that the claim, including defense costs, would not
> exceed the $100,000.00 deductible.  We understand that Titan
> attends [sic] to appeal this decision.
>
> In order to determine the extent to which Commonwealth may
> be obliged to cover Titan for this judgment, it requires a

complete copy of your internal file, including specifically all trial and deposition transcripts, all reports from the defense attorney, together with a copy of their file.  Commonwealth also requires that Titan authorize its defense Attorney to speak to us freely with respect to his conduct of the case from beginning to end.  We require the particulars of all demands and settlement offers.

Commonwealth reserves all of its rights with respect to coverage for this claim and waives none.  We will give you our views with respect to coverage once we obtain the material which is requested herein.

Mason Declaration, Ex. 34.  Titan did not respond to either the October 20 or 24, 2000, letters.

On August 29, 2001, the appellate court affirmed the New  judgment. Titan then petitioned the Iowa Supreme Court for review.  The Iowa Supreme Court denied review in December 2001.  By letter dated December 3, 2001, La Suer forwarded Holley a copy of the Iowa Supreme Court order, and suggested that Titan pick a date to pay the total due, which had grown with the addition of interest to $382,581.35, to the Clerk of the Court to satisfy the judgment. Titan's Summary Judgment Motion, Ex. A, Deposition of Cheri Holley (Holley Dep.),  Ex. 59, p. 2.

On December 7, 2001, Titan requested that Commonwealth pay the amount of the New judgment that exceeded the SIR.  On December 12, 2001, La Suer sent a letter to Shave, which stated

This letter is a follow up to my letter of December 7, 2001. Enclosed please find confidential copies of all bills for legal services rendered in connection with this case. As you can see, the legal bills total $29,321.53 for the trial and subsequent appeals. As a result, there is $70,678.47 remaining on the deductible. Titan will prepare a check in the amount of $70,678.47, and Titan now asks that Commonwealth the [sic] remaining amount of the judgment or $313,009.00. We would ask that the check be made payable to "Clerk of District Court of Polk County." Titan still wishes to satisfy this judgment on December 17, 2001.

Holley Dep., Ex. 60. By letter dated December 17, 2001, Commonwealth

denied Titan's request, asserting that Titan forfeited coverage for the New

claim. Id., Ex. 61.

Commonwealth filed the instant declaratory judgment action on

December 26, 2001, asserting that Titan breached its duty of cooperation

under the policies and, thus, forfeited its coverage for the New action.

Titan answered, asserting affirmative defenses of estoppel, waiver, unjust

enrichment, unclean hands, and Commonwealth's failure to fulfil its duties

and obligations under the contract. Titan also filed a counterclaim, alleging

that Commonwealth breached the insurance agreement by denying Titan's

request to pay the New judgment and the defense costs incurred by Titan

in connection with the New lawsuit.  The parties each seek summary judgment.

## ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must consider the evidence in the light most favorable to the party opposing summary judgment  and draw all reasonable inferences in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The parties agree that Illinois law governs this case. See Cincinnati Ins. Co. v. Dawes Rigging & Crane Rental, 321 F.Supp.2d 975 (C.D. Ill. 2004).

Commonwealth seeks summary judgment in its favor, arguing that Titan breached its duty of cooperation, thereby forfeiting its coverage for the New action.  Titan opposes Commonwealth's motion and moves for summary judgment on its counterclaim, arguing that Commonwealth is estopped from asserting any policy defenses as a matter of law and, alternatively, that Commonwealth cannot demonstrate that Titan breached

the policy's cooperation clause.  As set forth below, Commonwealth's

Summary Judgment Motion is allowed, in part, and denied, in part.  Titan's

Summary Judgment Motion is denied.

The applicable portion of Policy CRX57220 provides:

3.  <u>NOTICE OF CLAIM OR SUIT</u>
Upon the happening of an accident or Occurrence with may
give rise to a claim hereunder, the Insured shall give notice
thereof as soon as practicable after notice has been received
by an officer of the Insured, to the Insurer.
Such notice shall contain all available information pertaining to
such accident or occurrence which is obtainable at the time.
If claim is made or suit is brought against the Insured, the
Insured shall immediately forward to the Insurer every demand,
notice, summons or other process received by the Insured or
by the Insured's representative.

4.  <u>ASSISTANCE AND COOPERATION</u>
The Insured shall cooperate with the Insurer and, upon the
Insurer's request, assist in making settlements, in the conduct
of suits and in enforcing any right of contribution or indemnity
against any person or organization who may be liable to the
Insured because of injury or damage with respect to which
insurance is afforded under this Policy; and the Insured shall
attend hearings and trials and assist in securing and giving
evidence and obtaining the attendance of witnesses.

<u>Complaint for Declaratory Relief</u>, Ex. A, <u>Insuring Agreements</u>, p. 12.

The Court turns first to Titan's estoppel argument.  Titan contends

that Commonwealth is estopped from raising any defense under the policy

based on its failure to timely reserve its rights or file a declaratory judgment

action.  Under Illinois law, an insurer that breaches its duty to defend is estopped from raising policy defenses to coverage.  <u>Employers Ins. of Wausau v. Ehlco Liquidating Trust</u>, 708 N.E.2d 1122, 1133 (Ill. 1999).  In general, an insurer that takes the position that a complaint is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured, but rather must either (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage.  <u>Id</u>. at 1134-35.  If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage.  <u>Id</u>. at 1135.  Significantly, the estoppel doctrine applies only when an insurer has breached its duty to defend, and a court must thus analyze whether the insurer had the duty to defend and, if so, whether the duty was breached.  <u>Id</u>.

Commonwealth asserts that "[i]n order for the harsh estoppel penalty to be applied to an insurer as a consequence of its improper failure to defend its insured, the insured must first seek the insurer's assistance . . . ."  <u>Commonwealth Insurance Company's Opposition to Titan Tire Corporation's Motion for Summary Judgment (d/e 47)</u>, p. 21.  Illinois,

however, has expressly rejected a tender requirement in estoppel cases.
Cincinnati Companies v. West American Ins. Co., 701 N.E.2d 499
(Ill. 1998).  Instead, the Illinois Supreme Court has held that "where the
insured has not knowingly decided against an insurer's involvement, the
insurer's duty to defend is triggered by actual notice of the underlying suit,
regardless of the level of the insured's sophistication."  Id. at 505.  The
Illinois Supreme Court noted that in order to have actual notice, "the insurer
must know both that a cause of action has been filed and that the
complaint falls within or potentially within the scope of the coverage of one
of its policies."  Id.  The issue of whether an insurer had actual notice of a
suit is a factual one.  Ehlco, 708 N.E.2d at 1131.  Moreover, even if a duty
to defend arises, an insured is relieved of its duty to defend "[i]f the insured
indicates that it does not want the insurer's assistance, or is unresponsive
or uncooperative."  Cincinnati Companies, 701 N.E.2d at 504; see also
Ehlco, 708 N.E.2d at 1135 ( "Application of the estoppel doctrine is not
appropriate if the insurer had no duty to defend, or if the insurer's duty to
defend was not properly triggered. These circumstances include where the
insurer was given no opportunity to defend . . . .").

In the present case, numerous factual issues remain with respect to Commonwealth's duty to defend.  Viewing the evidence in the light most favorable to Commonwealth, genuine issues of fact exist as to (1) whether Titan knowingly decided against Commonwealth's involvement, (2) at what point Commonwealth knew that the New complaint fell within or potentially within the scope of the policies, and (3) whether Titan's actions relieved Commonwealth of any duty to defend.  Thus, Titan is not entitled to summary judgment under an estoppel theory.

The Court, therefore, turns to an analysis of Titan's performance under the policies' cooperation requirements.  Commonwealth bears the burden of establishing a breach of Titan's cooperation obligations.  See M.F.A. Mut. Ins. Co. v. Cheek, 363 N.E.2d 809, 811 (Ill. 1977). Commonwealth contends that (1) Titan breached its duty to cooperate with Commonwealth, (2) Titan's refusal to cooperate substantially prejudiced Commonwealth, (3)  Commonwealth exercised a reasonable degree of diligence to obtain Titan's cooperation, (4) Titan's refusal to cooperate was willful, and (5) Titan's refusal to cooperate extinguished Commonwealth's duty to indemnify and defend Titan in the New case.  Titan asserts that

Commonwealth cannot meet its burden of proof on the issues of breach, prejudice, diligence, or willfulness.

Turning to the question of breach, the Court finds that no genuine issue of material fact exists on this issue.  The undisputed facts show that Titan did not forward to Commonwealth "every demand, notice, summons or other process received" as required under the policy.  Titan participated in extensive settlement negotiations both prior to and following the New trial, and Titan did not forward any of the demands to Commonwealth.  Therefore, Titan breached its obligations under the plain language of the policy.  Commonwealth is entitled to summary judgment on this element.  However, as set forth below, genuine issues of fact exist as to prejudice, diligence, and willfulness.

With respect to the question of prejudice, to succeed in its declaratory judgment action, Commonwealth must "demonstrate that it was actually hampered in its defense by the violation of the cooperation clause."  M.F.A. Mut. Ins. Co., 363 N.E.2d at 813.  Both sides assert that they are entitled to summary judgment on this element.  However, viewing the evidence in the light most favorable to Commonwealth, a material issue of fact exists on this issue, given the settlement offers by the News that were

below the ultimate judgment and the fact that Commonwealth was not informed of the trial until after a verdict had been rendered.  Titan, therefore, is not entitled to summary judgment as to prejudice.

Commonwealth's request for summary judgment on the issue of prejudice is denied as well.  Commonwealth bears the burden of proving prejudice; prejudice is not to be presumed from a breach of cooperation. See id.  Viewing the evidence in the light most favorable to Titan, Commonwealth fails to identity undisputed facts sufficient to meet this burden.  The mere fact that Titan refused settlement offers that were below the ultimate judgment is not dispositive on the issue of prejudice. Commonwealth provides no evidence that it would have accepted these settlement offers.  Summary judgment on the issue of prejudice is not appropriate.

The question of whether an insurer exercised a reasonable degree of diligence in seeking the insured's cooperation is a factual one.  Mazzuca v. Eatmon, 360 N.E.2d 454, 456 (Ill. App. 1st Dist. 1977).  In the present case, genuine issues of fact preclude summary judgment on this element.  As set forth above, Commonwealth made some attempts to become involved in the New case.  The question of the sufficiency of these efforts, in light of

the communications to Commonwealth from Titan regarding the New case, is not an appropriate one for summary judgment.

The question of whether an insured's failure to cooperate was willful is also factual. Mazzuca, 360 N.E.2d at 456. In the present case, Titan asserts that it was relieved of its obligation to cooperate because (1) Commonwealth allowed Titan to believe there was no coverage for the New claim; (2) Commonwealth never advised Titan of any failure to provide necessary information; and (3) Titan acted in accordance with the parties' prior course of dealing. Each of these arguments go to the willfulness of Titan's failure to perform its cooperation obligations. In Illinois, an insured is generally bound to know his policy's contents. Estate of Blakely v. Federal Kemper Life Assur. Co., 640 N.E.2d 961, 968 (Ill. App. 2d Dist. 1994). This general rule does not apply, however, where the insured has been misled by some act of the insurer. Id. A factual question, sufficient to defeat summary judgment, exists as to whether Titan was misled by Commonwealth into believing that there was no coverage for the New case, given the conversation between La Suer and Brennan. Similarly, questions of fact exists as to whether Titan was led to believe that its submissions were sufficient and whether Titan acted in accordance with

the parties' prior course of dealings.  Conversely, the evidence, when

viewed in the light most favorable to Commonwealth, could support a

finding that Titan indeed acted willfully.  Despite the early correspondence

from Davis inquiring as to whether the New case would exceed the SIR,

Titan never forwarded Commonwealth any information regarding the

amount of money involved in the New case or any of the News's settlement

demands.  Summary judgment is inappropriate on this element.

## CONCLUSION

Therefore, as set forth above, Commonwealth Insurance Company's

Motion for Summary Judgment (d/e 33) is ALLOWED, in part, and

DENIED, in part.  Commonwealth is granted partial summary judgment on

the issue of breach.  Commonwealth's Motion is denied in all other

respects.  Titan's Motion for Summary Judgment Pursuant to

Fed. R. Civ. P. 56 (a) & (b) (d/e 38) is DENIED.

A telephone conference is set January 23, 2006 at 2:30 p.m. to

discuss the scheduling of a final pretrial conference and bench trial.  The

parties are also directed to discuss the possibility of returning to private

mediation in light of the Court's order concerning summary judgment.

IT IS THEREFORE SO ORDERED.

ENTER:   December 20, 2005

FOR THE COURT:

s/ Byron G. Cudmore
_____
BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE